## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LESLIE CONTROLS, INC., | : | Case No. 10-12199 (CSS) |
| | : | |
| Debtor.[1] | : | **Related Docket Nos. 172, 213 and 284** |
| | : | |

**10 - 9 2 4**

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE FIRST AMENDED PLAN OF REORGANIZATION OF LESLIE CONTROLS, INC. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

WHEREAS, on July 12, 2010 (the "Petition Date"), Leslie Controls, Inc. (the "Debtor")

filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code"); and

WHEREAS, on the Petition Date, the Debtor filed the Plan of Reorganization of Leslie

Controls, Inc. Under Chapter 11 of the Bankruptcy Code [Docket No. 15] and Disclosure

Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect to the Plan of

Reorganization of Leslie Controls, Inc. Under Chapter 11 of the Bankruptcy Code [Docket No.

16]; and

WHEREAS, on July 21, 2010, the Debtor filed the Motion of the Debtor for an Order

Approving (I) the Disclosure Statement; (II) the Solicitation and Voting Procedures; (III)

Deadlines and Procedures to File Objections to the Plan; (IV) a Hearing Date to Consider

Confirmation of the Plan and (V) the Form and Manner of Notice of Confirmation Hearing (the

"Solicitation Procedures Motion") [Docket No. 64]; and

---

[1] The last four digits of the Debtor's federal tax identification number are 3780.

WHEREAS, on August 11, 2010, the Debtor filed its schedules of assets and liabilities and statements of financial affairs (the "Schedules and Statements") [Docket Nos. 135 and 136]; and

WHEREAS, on August 12, 2010, the Debtor filed the First Amended Plan of Reorganization of Leslie Controls, Inc. Under Chapter 11 of the Bankruptcy Code [Docket No. 141] and the First Amended Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect to the First Amended Plan the Plan of Reorganization of Leslie Controls, Inc. Under Chapter 11 of the Bankruptcy Code [Docket No. 142]; and

WHEREAS, on August 19, 2010, the Court entered an order approving the Solicitation Procedures Motion (the "Solicitation Procedures Order") [Docket No. 166] that, among other things (i) approved the adequacy of the Disclosure Statement; (ii) approved the form, manner, and substance of the notice of solicitation (the "Solicitation Notice"), attached as Exhibit 1 to the Solicitation Procedures Order; (iii) approved the form and substance of the Attorney Solicitation Package, the Individual Solicitation Package, the Master Ballot, and the Individual Ballot (all as defined in the Solicitation Procedures Motion); (iv) approved the Voting and Solicitation Procedures (as defined in the Solicitation Procedures Motion), including the Voting Record Date of August 19, 2010 and Voting Deadline of September 27, 2010 at 5:00 p.m. (prevailing Eastern time); (v) established October 12, 2010 at 11:00 a.m. (prevailing Eastern time) as the Confirmation Hearing; (vi) established September 27, 2010 at 4:00 p.m. (prevailing Eastern time) as the deadline (the "Objection Deadline") to file and serve objections to the Plan; and (vii) approved the form, manner, and substance of the notices of Confirmation Hearing (the "Confirmation Hearing Notice" and "Publication Notice"), attached as Exhibits 5 and 6, respectively, to the Solicitation Procedures Order; and

46392/0001-6972080v8

WHEREAS, on August 20, 2010, the Debtor filed the First Amended Plan of Reorganization of Leslie Controls, Inc. Under Chapter 11 of the Bankruptcy Code dated August 20, 2010 (as amended or modified, the "Plan") [Docket No. 172]; and

WHEREAS, on August 20, 2010, the Debtor filed the First Amended Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect to the First Amended Plan the Plan of Reorganization of Leslie Controls, Inc. Under Chapter 11 of the Bankruptcy Code dated August 20, 2010 (as amended or modified, the "Disclosure Statement") [Docket No. 173]; and

WHEREAS, on August 25, 2010, the Debtor published the Solicitation Notice in the Wall Street Journal (National Edition) and USA Today (National Edition); and

WHEREAS, on September 1, 2010, the Debtor published the Solicitation Notice in the Mealey's Litigation Report: Asbestos; and

WHEREAS, on September 8, 2010, the Debtor published the Solicitation Notice in the Mealey's Asbestos Bankruptcy Report; and

WHEREAS, on August 27, 2010, Debtor filed Notices of Filing of Affidavits of Publication Regarding Notice of Solicitation of Plan [Docket Nos. 190 and 191], evidencing publication of the Solicitation Notice in the Wall Street Journal (National Edition) and USA Today (National Edition), respectively; and

WHEREAS, on September 20, 2010, Debtor filed the Affidavit of Publication [Docket No. 247], evidencing publication of the Solicitation Notice in the Mealey's Litigation Report: Asbestos and Mealey's Asbestos Bankruptcy Report; and

WHEREAS, on August 24, 2010, the Debtor filed the Confirmation Hearing Notice [Docket No. 176] and caused the Confirmation Hearing Notice to be served by first-class mail

3

upon the Debtor's creditor matrix, the equity interest holder of record, the Office of the United States Trustee, counsel to CIRCOR, counsel to the Committee, counsel to the Future Claimants' Representative, the United States Securities and Exchange Commission, the Internal Revenue Service, the Office of the United States Attorney for the District of Delaware, the insurance carriers providing asbestos insurance coverage to the Debtor and any party that filed an entry of appearance; and

WHEREAS, the Debtor filed Affidavits of Service Docket Nos. 192, 198, 245, 251, 302 and 334 evidencing service of the Confirmation Hearing Notice on creditors and other parties-in-interest; and

WHEREAS, on September 2, 2010, the Debtor published the Publication Notice in the Wall Street Journal (National Edition) and USA Today (National Edition); and

WHEREAS, on September 8, 2010, the Debtor published the Publication Notice in the Mealey's Asbestos Bankruptcy Report; and

WHEREAS, on September 15, 2010, the Debtor published the Publication Notice in the Mealey's Litigation Report: Asbestos; and

WHEREAS, on September 10, 2010, the Debtor filed Notices of Filing of Affidavit of Publication Regarding Notice of (I) Hearing to Consider Confirmation of Plan and (II) Objection Deadline and Procedures [Docket Nos. 207 and 208] evidencing publication of the Publication Notice in the Wall Street Journal (National Edition) and USA Today (National Edition), respectively; and

WHEREAS, on September 21, 2010, Debtor filed the Affidavit of Publication [Docket No. 248], evidencing publication of the Publication Notice in the Mealey's Litigation Report: Asbestos and Mealey's Asbestos Bankruptcy Report; and

4

46392/0001-6972080v8

WHEREAS, on or about August 26, 2010, the Debtor commenced solicitation of votes (the "Solicitation") on the Plan by causing its Claims and Balloting Agent to mail (i) the Attorney Solicitation Package to each lead law firm of record for the holders of Class 4 Asbestos PI Claims listed on the Debtor's Schedules and Statements or otherwise known to the Debtor by the Voting Record Date on behalf of all the claimants represented by such lead law firm (each a "Lead Law Firm"); and (ii) the Attorney Solicitation Package, without a Master Ballot, to each law firm serving as co-counsel to the Lead Law Firm (each "Co-Counsel") for the holders of Class 4 Asbestos PI Claims listed on the Debtor's Schedules and Statements or otherwise known to the Debtor by the Voting Record Date on behalf of all the claimants represented by such Co-Counsel; and

WHEREAS, on September 22, 2010, the Debtor filed the Affidavit of Service of Solicitation Materials, sworn to on September 20, 2010 [Docket No. 251] (the "Affidavit of Service"), evidencing service of the Attorney Solicitation Packages on the Lead Law Firms, Co-Counsel and holders of Class 4 Asbestos PI Claims who did not authorize counsel to submit a ballot on their behalf; and

WHEREAS, on September 13, 2010, the Debtor filed the Notice of Filing of Nonmaterial Modifications to the Plan reflecting modifications to Section 9.3 (The Asbestos PI Trust), Section 10.4 (Insurance Neutrality) and Section 13.2 (Retention of Jurisdiction) (the "Plan Modifications") [Docket No. 213]; and

WHEREAS, on September 17, 2010, the Debtor filed the Plan Supplement to First Amended Plan of Reorganization of Leslie Controls, Inc. Under Chapter 11 of the Bankruptcy Code (the "Plan Supplement") [Docket No. 238]; and

5

46392/0001-6972080v8

WHEREAS, on October 8, 2010, the Debtor filed the Declaration of Stephenie Kjontvedt on behalf of Epiq Bankruptcy Solutions, LLC, Regarding Voting and Tabulation of Ballots Accepting and Rejected the First Amended Plan of Reorganization of Leslie Controls, Inc., Under Chapter 11 of the Bankruptcy Code (the "Voting Declaration") [Docket No. 324]; and

WHEREAS, eleven (11) objections or informal objections to confirmation of the Plan were filed or otherwise received by the Debtor (the "Objections"), including the Objections of Winterthur Swiss Insurance Company and Yasuda Fire & Marine Insurance Company (U.K.), Ltd. To Confirmation of the First Amended Plan of Reorganization [Docket No. 268], Century Indemnity Company's Objection to Confirmation of the First Amended Plan [Docket No. 270], Objection of Fireman's Fund Insurance Company to First Amended Plan of Reorganization [Docket No. 271], Joinder of National Union Fire Insurance Company of Pittsburgh, PA to Objection of Century Indemnity Company to the Debtor's First Amended Joint Plan of Reorganization [Docket No. 272], The Central National Insurance Company of Omaha's Joinder in Objections of Winterthur Swiss Insurance Company and Yasuda Fire & Marine Insurance Company (U.K.), Ltd. and Century Indemnity Company to Confirmation of the Debtor's First Amended Plan of Reorganization [Docket No. 294], and the Joinder of New Jersey Manufacturers Insurance Company to Objections to Confirmation of the Debtor's First Amended Plan of Reorganization filed by Fireman's Fund Insurance Company and Century Indemnity Company [Docket No. 335] (together, the "Insurers' Objections"); and

WHEREAS, on October 21, 2010, the Debtor filed the Response of Debtor to Objections of Various Insurers to First Amended Plan of Reorganization of Leslie Controls, Inc. Under Chapter 11 of the Bankruptcy Code (the "Response") [Docket No. 348]; and

6

WHEREAS, on September 30, 2010, the Debtor filed the Debtor's Motion to Strike the Objecting Insurers Objections to Confirmation of the Debtor's First Amended Plan of Reorganization (the "Motion to Strike") [Docket No. 284]; and

WHEREAS, on October 19, 2010, Century Indemnity Company, Fireman's Fund Insurance Company, Winterthur Swiss Insurance Company, Yasuda Fire & Marine Insurance Company (U.K.) Ltd. and National Union Fire Insurance Company of Pittsburgh, PA filed the Certain Insurers' Opposition to Debtor's Motion to Strike Insurers' Objections on Grounds of Purported Lack of Standing (the "Opposition to the Motion to Strike") [Docket No. 343]; and

WHEREAS, on October 21, 2010, the Debtor filed the Debtor's Reply to Certain Insurers' Opposition to Debtor's Motion to Strike the Objecting Insurers Objections to Confirmation of the Debtor's First Amended Plan of Reorganization (the "Reply") [Docket No. 356]; and

WHEREAS, on October 15, 2010, the Debtor, the Committee and the Future Claimants' Representative filed a Motion in Limine to Exclude the Expert Testimony of Charles H. Mullin (the "Mullin Motion in Limine") [Docket No. 337]; and

WHEREAS, on October 15, 2010, the Debtor, the Committee and the Future Claimants' Representative filed a Motion in Limine to Exclude the Expert Testimony of George L. Priest (the "Priest Motion in Limine" and, together with the Mullin Motion in Limine, the "Motions in Limine") [Docket No. 338]; and

WHEREAS, on October 25, 2010, certain Insurers filed a Response in Opposition to Plan Proponents' Motions to Exclude the Expert Testimony of George L. Priest and Charles H. Mullin (the "Insurers' Response to the Motions in Limine") [Docket No. 358]; and

7

WHEREAS, on October 22, 2010, the Debtor filed the Debtor's Memorandum of Law in Support of an Order Confirming the First Amended Plan of Reorganization of Leslie Controls, Inc. Under Chapter 11 of the Bankruptcy Code (the "Memorandum of Law") [Docket No. 349]; and

WHEREAS, the Confirmation Hearing was originally scheduled for October 12, 2010 at 11:00 a.m., was adjourned by announcement in open court to October 26, 2010 at 11:00 a.m. and then rescheduled by the Court for October 26, 2010 at 1:00 p.m.; and

WHEREAS, the Confirmation Hearing was held on October 26-27, 2010; and

NOW, THEREFORE, based upon the Court's review of the Disclosure Statement, the Plan, the Attorney Solicitation Package, the Voting Declaration, the Solicitation Notice, the Confirmation Hearing Notice, the Publication Notice, the Schedules and Statements, the Plan Supplement, the Response, the Plan Modifications, the Memorandum of Law, and upon (i) all of the evidence proffered or adduced at, memoranda filed in connection with (other than the Insurers' Objections, which the Court did not consider because it found that the Insurers lack standing), and arguments of counsel made at, the Confirmation Hearing and (ii) the entire record of this Chapter 11 Case; and after due deliberation thereon; and good and sufficient cause appearing therefore, it is hereby found and determined that:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014. [2] To the extent any of the following findings of

---

[2]     Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

46392/0001-6972080v8

fact constitute conclusions of law, thcy are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

## A.    Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))

This Court has jurisdiction over the Debtor's Chapter 11 Case pursuant to sections 157 and 1334 of title 28 of the United States Code. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and, subject to the requirement of 11 U.S.C. § 524(g)(3)(A), this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed. Venue is proper under sections 1408 and 1409 of title 28 of the United States Code. Leslie is a proper debtor under section 109 of the Bankruptcy Code and proper proponent of the Plan under section 1121(a) of the Bankruptcy Code.

## B.    Commencement, Appointment of Committee and Future Claimants' Representative

On thc Commencement Date, the Debtor filed a voluntary petition for relief under chapter 11 of thc Bankruptcy Code (the "Chapter 11 Case"). The Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On July 22, 2010, the Office of the United States Trustee appointed, pursuant to section 1102 of the Bankruptcy Code, an Official Commitee of Unsecured Creditors (the "Committee") consisting of the following nine members: Charley Louis Brown (c/o Brayton Purcell, LLP); Rosario Gallo (c/o Belluck & Fox, LLP); Paul McKenzie (c/o Bergman Draper & Frockt); Patsy Chaffee, Special Administrator of Robert Chafee (c/o Cooney & Conway); Terri L. Wells, Executrix to the Estate of Murray Wells (c/o Early Ludwick Sweeney & Strauss); Beverly Lindenmayer (c/o Kazan, McLain, Lyons, Greenwood & Harley, PLC); John Wheeler Estep, Jr.

9

(c/o Motley Rice LLC); Mary A. Mayo (c/o Waters & Kraus, LLP); and Paul B. Stack (c/o Weitz & Luxenberg, P.C.)

On August 9, 2010, the Court appointed James L. Patton, Jr., pursuant to sections 105(a) and 524(g)(4)(b)(i) of the Bankruptcy Code, as the legal representative for future asbestos personal injury claimants (the "Future Claimants' Representative"). No trustee or examiner has been appointed.

## C.     Judicial Notice

This Court takes judicial notice of the docket of the Chapter 11 Case maintained by the Clerk of the Bankruptcy Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and argument made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Case, including, but not limited to, the Confirmation Hearing.

## D.     Burden of Proof

The Debtor has the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of evidence.

## E.     Notice of Confirmation Hearing

The Confirmation Hearing Notice was served and the Publication Notice was published in compliance with the Solicitation Procedures Order, and such service and publication were adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing Notice and the other deadlines established in the Solicitation Procedures Order was given in compliance with the Bankruptcy Rules and the Solicitation Procedures Order, and no other or further notice is or shall be required.

10

46392/0001-6972080v8

**F.    Impaired Class That Has Voted To Accept The Plan**

As set forth in the Plan, holders of Class 4 Asbestos PI Claims are impaired and entitled to vote; and, as set forth in the Voting Declaration, holders of Class 4 Asbestos PI Claims voted in excess of the statutory thresholds in sections 1126(c) and 524(g) of the Bankruptcy Code. Thus, at least one impaired Class of Claims has voted to accept the Plan. Votes to accept and reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code and the Bankruptcy Rules.

**G.    Classes Conclusively Presumed to Have Accepted the Plan**

Class 1 (Other Priority Claims), Class 2 (Secured Claims), Class 3 (General Unsecured Claims), Class 5 (Intercompany Claims) and Class 6 (Equity Interests in Leslie) are unimpaired under the Plan, and pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to have accepted the Plan.

**H.    Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))**

The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

**I.    Plan Compliance with Bankruptcy Code (11 U.S.C. §§ 1122 and 1123)**

1.    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).

In addition to the Allowed Administrative Expense Claims, Priority Tax Claims and the DIP Claim listed in Section 2 of the Plan, which need not be designated, the Plan designates six (6) Classes of Claims and Equity Interests. The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly

11

46392/0001-6972080v8

discriminate between holders of Claims and Equity Interests. Thus, the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code are satisfied.

2.      Specify Unimpaired Classes (11 U.S.C. § 1123(a)(2)).

Article IV of the Plan specifies that Class 1 (Other Priority Claims), Class 2 (Secured Claims), Class 3 (General Unsecured Claims, Class 5 (Intercompany Claims) and Class 6 (Equity Interests in Leslie) are unimpaired under the Plan. Thus, the requirements of section 1123(a)(2) of the Bankruptcy Code are satisfied.

3.      Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).

Article IV of the Plan designates Class 4 (Asbestos PI Claims) as impaired and specifies the treatment of Claims in those Classes. Thus, the requirements of section 1123(a)(3) of the Bankruptcy Code are satisfied.

4.      No Discrimination (11 U.S.C. § 1123(a)(4)).

The Plan provides for the same treatment by the Debtor for each Claim or Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest. Thus, the requirements of section 1123(a)(4) of the Bankruptcy Code are satisfied.

5.      Implementation of Plan (11 U.S.C. § 1123(a)(5)).

The Plan provides adequate and proper means for the Plan's implementation, including, among other things, (i) the creation of the Asbestos PI Trust; and (ii) the transfer to and vesting in the Asbestos PI Trust of the Asbestos PI Trust Assets, as more fully described in Article 9.3 of the Plan. Leslie and Reorganized Leslie are authorized to implement the Plan in accordance with its terms and as detailed herein. Thus, the requirements of section 1123(a)(5) of the Bankruptcy Code are satisfied.

12

6.      Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).

As provided in Section 9.4 of the Plan, the Amended Certificate of Incorporation and Amended By-Laws prohibit the issuance of nonvoting equity securities.  Thus, the requirements of section 1123(a)(6) of the Bankruptcy Code are satisfied.

7.      Selection of Asbestos PI Trustee, Members of the Asbestos PI Trust Advisory Committee and Officers/Directors of Reorganized Leslie (11 U.S.C. § 1123(a)(7)).

Section 9.3 of Plan and the Plan Supplement contain provisions with respect to the manner of selection of the Asbestos PI Trustee and the Future Claimants' Representative.  The initial members  of the Asbestos PI Trust Advisory Committee shall be Alan Brayton, John Cooney, John A. Baden, IV, Peter A. Kraus and Steven Kazan.  Section 9.6 of Plan and the Plan Supplement identifies the members of the Board of Directors and officers of Reorganized Leslie. Thus, the requirements of section 1123(a)(7) of the Bankruptcy Code are satisfied.

8.      Additional Plan Provisions (11 U.S.C. § 1123(b)).

The Plan's provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

**J.      Compliance with Bankruptcy Rule 3016(a)**

The Plan is dated and identifies the Debtor as submitting it, thereby satisfying Bankruptcy Rule 3016(a).

**K.      Compliance With Bankruptcy Rule 3017**

The Debtor has given notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d).

46392/0001-6972080v8

**L.     Compliance With Bankruptcy Rule 3018**

The solicitation of votes to accept or reject the Plan satisfies Bankruptcy Rule 3018.  The Plan was transmitted to all creditors entitled to vote on the Plan, sufficient time was prescribed for such creditors to accept or reject the Plan, and the Attorney Solicitation Packages and Solicitation Procedures comply with section 1126 of the Bankruptcy Code, thereby satisfying the requirements of Bankruptcy Rule 3018.

**M.     Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129)**

1.     Debtor's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).

The Debtor has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

(i)     The Debtor is a proper debtor under section 109 of the Bankruptcy Code.

(ii)     The Debtor has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court.

(iii)     The Debtor has complied with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules in transmitting the Plan, the Disclosure Statement, and the Ballots, as the ease may be, and related documents in soliciting and tabulating votes on the Plan.

2.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).

The Debtor has proposed the Plan in good faith and not by any means forbidden by law, and this Confirmation Order was not procured by fraud, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtor's good faith is evident from the facts and record of this Chapter 11 Case, and the record of the Confirmation Hearing and other proceedings held in this Chapter 11 Case. The Plan was proposed with the legitimate and honest purpose of maximizing

14

46392/0001-6972080v8

the value of the Debtor's estate and resolving the Debtor's asbestos-related liabilities and to effectuate a successful reorganization of The Debtor.

3.    Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).

Any payment made or to be made by the Debtor for services or for costs and expenses in or in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

4.    Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).

The Plan complies with section 1129(a)(5) of the Bankruptcy Code. Section 9.6 of Plan and the Plan Supplement identifies the members of the Board of Directors and officers of Reorganized Leslie, and the appointment to, or continuance in, such offices of such person is consistent with the interests of holders of Claims against and Equity Interests in the Debtor and with public policy. The identity of any insider that will be employed or retained by Reorganized Leslie and the nature of such insider's compensation have also been fully disclosed, to the extent applicable.

5.    No Rate Changes (11 U.S.C. § 1129(a)(6)).

Section 1129(a)(6) of the Bankruptcy Code is satisfied because the Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

6.    Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).

The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis attached as Appendix D to the Disclosure Statement, the Chapter 11 Recovery Analysis attached as Appendix E to the Disclosure Statement and other evidence proffered or adduced at the Confirmation Hearing (a) are persuasive and credible, (b) have not been controverted by other

46392/0001-6972080v8

evidence, and (c) establish that each holder of an impaired Claim or Equity Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date.

7.      Acceptance of Certain Classes (11 U.S.C. § 1129(a)(8)).

Class 1 (Other Priority Claims), Class 2 (Secured Claims), Class 3 (General Unsecured Claims), Class 5 (Intercompany Claims) and Class 6 (Equity Interests in Leslie) are Classes of Unimpaired Claims that are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. As set forth in the Voting Declaration, Class 4 (Asbestos PI Claims) have voted to accept the Plan in accordance with sections 1126(c) and 524(g) of the Bankruptcy Code.

8.      Treatment of Administrative, Priority Tax and Priority Claims (11 U.S.C. § 1129(a)(9)).

The treatment of Administrative Expense Claims, the DIP Claim and Priority Claims pursuant to Sections 2.1, 2.3 and 4.1 of the Plan satisfies the requirements of sections 1129(a)(9)(A) and (B) of the Bankruptcy Code. The treatment of Priority Tax Claims pursuant to Section 2.2 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

9.      Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)).

Class 4 (Asbestos PI Claims) is an Impaired Class of Claims that has voted to accept the Plan in accordance with sections 1126(c) and 524(g) of the Bankruptcy Code and, to the Debtor's knowledge, does not contain insiders whose votes have been counted. Therefore, the

16

requirement of section 1129(a)(10) of the Bankruptcy Code that at least one Class of Claims against or Interests in the Debtor that is impaired under the Plan has accepted the Plan.

        10.     Feasibility (11 U.S.C. § 1129(a)(11)).

The Plan, the Plan Supplement and the Plan Modifications, all evidence proffered or adduced at the Confirmation Hearing (a) are persuasive and credible, (b) have not been controverted by other evidence, (c) do not provide for the liquidation of all or substantially all of the property of the Debtor, (d) establish that Reorganized Leslie will continue in business as an ongoing reorganized debtor, and (e) establish that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of Reorganized Leslie, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

        11.     Payment of Fees (11 U.S.C. § 1129(a)(12)).

All fees payable under section 1930 of title 28, United States Code, as determined by the Bankruptcy Court on the Confirmation Date, have been paid or will be paid, on and after the Effective Date, and thereafter as may be required until entry of a final decree with respect to the Debtor, thus satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

        12.     Retiree Benefits (11 U.S.C. § 1129(a)(13)).

Section 7.5 of Plan provides for the continuation of payment by the Debtor of all "retiree benefits," as defined in section 1114(a) of the Bankruptcy Code, if any, at previously established levels, thus satisfying the requirements of section 1129(a)(13) of the Bankruptcy Code.

        13.     Domestic Support Obligations (11 U.S.C. § 1129(a)(14))

The Debtor is not required to pay any domestic support obligations. Accordingly, section 1129(a)(14) of the Bankruptcy Code is not applicable to the Plan.

17

14.     Individual Cases Subject to Objection by Unsecured Creditor (11 U.S.C. § 1129(a)(15))

The Debtor is not an individual.  Accordingly, section 1129(a)(15) of the Bankruptcy Code is not applicable to the Plan.

15.     Transfers of Property Pursuant to Non-Bankruptcy Law (11 U.S.C. § 1129(a)(16))

All transfers of property of the Plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.  The Plan therefore complies with section 1129(a)(16) of the Bankruptcy Code.

16.     Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b)).

Based upon the evidence proffered, adduced, or presented by the Debtor in the Plan and the Disclosure Statement and at the Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable as required by section 1129(b)(1) of the Bankruptcy Code, and there are no Classes of Claims that have voted to reject the Plan.  The Plan does not discriminate unfairly with respect to any holders of Claims or Equity Interests.  The legal rights of holders of Claims or Equity Interests are treated consistently with the treatment of other classes whose legal rights are substantially similar, and such holders of Claims or Equity Interest holders do not receive more from the Debtor than they legally are entitled to receive for their Claims or Equity Interests.  Thus, the Plan may be confirmed.

17.     Principal Purpose of the Plan (11 U.S.C. § 1129(d)).

The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of section 5 of the Securities Act, and no governmental unit has objected to the confirmation of the

18

Plan on any such grounds. The Plan therefore satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**N.      Modifications to the Plan**

The Plan Modifications constitute technical changes that do not materially adversely affect or change the treatment of any Claims or Equity Interests and shall be considered part of the Plan. Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Asbestos PI Claims be afforded an opportunity to change previous  acceptances or rejections of the Plan.

**O.      Plan Supplement**

The Plan Supplement includes the following documents and/or information: (i) a schedule of rejected executory contracts, (ii) the certificate of amendment to certificate of incorporation, (iii) the identification of the Asbestos PI Trustee, (iv) the Asbestos Records Cooperation Agreement, (v) the officers and directors of Reorganized Leslie, and (vi) disclosure of the identity of insiders to be employed or retained by Reorganized Leslie and the nature of compensation. All such materials comply with the terms of the Plan.

**P.      Good Faith Solicitation (11 U.S.C. § 1125(e))**

Based on the record before the Bankruptcy Court in this Chapter 11 Case, the Debtor and the Released Parties, and in each case their current or former officers, directors, employees, agents, attorneys, accountants, financial advisors, other representatives, subsidiaries, affiliates, or any person who controls any of these within the meaning of the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable

46392/0001-6972080v8

provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 11.3 of the Plan.

**Q.      Assumption and Rejection**

The Plan's treatment of the assumption and rejection of Executory Contracts and Unexpired Leases in Section 7 of the Plan comports with the requirements of section 365(b) of the Bankruptcy Code.

**R.      Cure of Defaults (11 U.S.C. § 1123(d))**

Section 7.2 of the Plan and as modified herein governs the Cure associated with each executory contract and unexpired lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. The Cure will be determined in accordance with the underlying agreements and applicable bankruptcy and non-bankruptcy law. Thus, the Plan satisfies the requirements of section 1123(d) of the Bankruptcy Code.

**S.      Satisfaction of Confirmation Requirements**

The Plan satisfies all applicable requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**T.      Retention of Jurisdiction**

The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Section 13.1 of the Plan and section 1142 of the Bankruptcy Code.

**U.**     **Plan Compliance with Requirements of Section 524(g)**

As of the Commencement Date, the Debtor, CIRCOR, and/or Watts have been named as

defendants in approximately 1,340 asbestos-related personal injury suits, seeking recovery for

damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing

products.  The Asbestos PI Channeling Injunction set forth in the Plan that is to be implemented

with the Asbestos PI Trust complies with the requirements of Section 524(g) of the Bankruptcy

Code as follows:

1.     District Court Approval (11 U.S.C. § 524(g)(3)(A)).

The Court, having considered both the confirmation of the Plan and the issuance of the

Asbestos PI Channeling Injunction at the Confirmation Hearing held before the Bankruptcy

Court on October 26-27, 2010, finds and determines that the Asbestos PI Channeling Injunction

and the Asbestos PI Trust to be established by virtue of this Confirmation Order are consistent

with the provisions of section 524(g)(1)(A).  The Asbestos PI Channeling Injunction also must

be affirmed by the United States District Court for the District of Delaware (the "District Court")

as mandated by Section 524(g)(3)(A) as a condition precedent to the Effective Date of the Plan.

2.     Assumption of Liabilities (11 U.S.C. § 524(g)(2)(B)(i)(I)).

The Debtor has been named as a defendant in asbestos-related personal injury suits

seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or

asbestos-containing products.  In compliance with section 524(g)(2)(B)(i)(I) of the Bankruptcy

Code and pursuant to Section 4.4 of the Plan, as of the Effective Date, liability for all Asbestos

PI Claims shall automatically and without further act, deed or court order be channeled to and

assumed by the Asbestos PI Trust in accordance with, and to the extent set forth in, Articles IX

and XI of the Plan and the applicable Plan Documents.  Each Asbestos PI Claim shall be

21

determined and paid in accordance with the terms, provisions and procedures of the Asbestos PI

Trust Agreement and the Asbestos PI Trust Distribution Procedures.

3.   Funding of the Asbestos PI Trust (11 U.S.C. § 524(g)(2)(B)(i)(II)).

The Asbestos PI Trust shall be funded by the CIRCOR Asbestos PI Trust Contribution

and Leslie Contribution in accordance with the provisions of Section 9.3 of the Plan. Therefore,

the Plan satisfies section 524(g)(2)(B)(i)(II) of the Bankruptcy Code.

4.   Transfer of Membership Interests (11 U.S.C. § 524(g)(2)(B)(i)(III)).

Pursuant to Section 9.3 of the Plan, Reorganized Leslie shall execute and deliver to the

Asbestos PI Trust, the Leslie Promissory Note. As security for the Promissory Note, on the

Effective Date, CIRCOR shall execute and deliver to the Asbestos PI Trust the CIRCOR Pledge

whereby CIRCOR shall grant a security interest in 100% of the outstanding voting equity

interests of Reorganized Leslie to the Asbestos PI Trust as security for the Leslie Promissory

Note. Thus, the Plan satisfies section 524(g)(2)(B)(i)(III) of the Bankruptcy Code.

5.   Use of Trust Assets (11 U.S.C. § 524(g)(2)(B)(i)(IV)).

The Asbestos PI Trust will use its assets and income to satisfy Allowed Asbestos PI

Claims and Demands. Thus, the Plan satisfies section 524(g)(2)(B)(i)(IV) of the Bankruptcy

Code.

6.   Likelihood of Future Demands (11 U.S.C. § 524(g)(2)(B)(ii)(I)).

In the absence of the Plan, the Debtor would be likely to be subject to substantial future

Demands for payment arising out of the same or similar conduct or events that gave rise to the

existing Asbestos PI Claims which are addressed by the Asbestos PI Channeling Injunction.

Thus, the Plan satisfies section 524(g)(2)(B)(ii)(I) of the Bankruptcy Code.

22

46392/0001-6972080v8

7.    Indeterminate Nature of Future Demands (11 U.S.C.
      § 524(g)(2)(B)(ii)(II)).

The actual amounts, numbers and timing of Demands cannot be determined. Therefore,

the Plan satisfies section 524(g)(2)(B)(ii)(II) of the Bankruptcy Code.

8.    Threat of Future Demands Pursued Outside the Plan (11 U.S.C.
      § 524(g)(2)(B)(ii)(III)).

Pursuit of Demands outside the procedures prescribed by the Plan is likely to threaten the

Plan's purpose to deal equitably with Asbestos PI Claims and Demands. Thus, the Plan satisfies

section 524(g)(2)(B)(ii)(III) of the Bankruptcy Code.

9.    Description of Asbestos PI Channeling Injunction in Plan and Disclosure
      Statement (11 U.S.C. § 524(g)(2)(B)(ii)(IV)(aa)).

The terms of the Asbestos PI Channeling Injunction, including provisions barring actions

against third parties, are set forth in the Plan and described in the Disclosure Statement. Thus,

the Plan satisfies section 524(g)(2)(B)(ii)(IV)(aa) of the Bankruptcy Code.

10.   Acceptance of Plan by Class Addressed by Asbestos PI Trust (11 U.S.C.
      § 524(g)(2)(B)(ii)(IV)(bb)).

The Plan separately classifies asbestos-related personal injury claims into Class 4

(Asbestos PI Claims), and pursuant to Section 5.3 of the Plan, and evidenced by the Vote

Declaration, at least two-thirds (2/3) in amount and seventy-five percent (75%) in number of the

members of such Class actually voting on the Plan have voted to accept the Plan. Specifically,

the Plan has received acceptances from 571 in number and between $9.1 million and $40 million

in amount of creditors holding Asbestos PI Claims who voted.[3]  Thus, the Plan satisfies section

524(g)(2)(B)(ii)(IV)(bb) of the Bankruptcy Code.

_____

[3] *See* Exhibit A-1 of the Voting Declaration.

23

11.    Operation of the Asbestos PI Trust (11 U.S.C. § 524(g)(2)(B)(ii)(V)).

Pursuant to (a) the Asbestos PI Trust Distribution Procedures; (b) court order; or (c)

otherwise, the Asbestos PI Trust will operate through mechanisms such as structured, periodic,

or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the

numbers and values of Asbestos PI Claims and Demands or other comparable mechanisms that

provide reasonable assurance that the Asbestos PI Trust will value, and be in a financial position

to pay, similar Asbestos PI Claims and Demands in substantially the same manner.  Therefore,

the Plan complies with section 524(g)(2)(B)(ii)(V) of the Bankruptcy Code.

12.    Identity of Protected Third-Party (11 U.S.C. § 524(g)(4)(A)(ii)).

The Asbestos PI Channeling Injunction bars actions against the Asbestos Protected

Parties, which parties are clearly defined and identified in the Plan and in the Asbestos PI

Channeling Injunction.  Thus, the Plan complies with section 524(g)(4)(A)(ii) of the Bankruptcy

Code.

13.    Appointment of the Future Claimants' Representative (11 U.S.C.
       § 524(g)(4)(B)(i)).

James L. Patton, Jr. was appointed by the Bankruptcy Court as the Future Claimants'

Representative for the purpose of, among other things, protecting the rights of persons that might

subsequently assert Demands of the kind that are addressed in the Asbestos PI Channeling

Injunction and transferred to the Asbestos PI Trust.  James L. Patton, Jr. was requested to serve

in that capacity in January 2010 and did so in connection with the negotiation, preparation and

solicitation of acceptances of the Plan prior to the Commencement Date.  Therefore, the Plan

satisfies section 524(g)(4)(B)(i).

24

14.    Asbestos PI Channeling Injunction is Fair and Equitable (11 U.S.C.
       § 524(g)(4)(B)(ii)).

In light of the benefits provided, or to be provided, to the Asbestos PI Trust and/or

Reorganized Leslie by or on behalf of each current and future Asbestos Protected Party, the

Asbestos PI Channeling Injunction is fair and equitable to all creditors and Future Demand

Holders. Thus, the Plan complies with section 524(g)(4)(B)(ii) of the Bankruptcy Code.

The Plan and its acceptance otherwise comply with sections 524(g) and 1126 of the

Bankruptcy Code, and confirmation of the Plan is in the best interest of all creditors.

## V.    Asbestos PI Trust Contributions

The Asbestos PI Trust Contributions, which consist of the Leslie Contribution and

CIRCOR Asbestos PI Trust Contribution, constitute substantial assets of the Plan and the

reorganization, are essential and necessary to the feasibility of the Plan and the successful

reorganization of the Debtor, and constitute a sufficient basis upon which to provide the

CIRCOR Related Parties and Watts Related Parties with the protections afforded to them under

the Plan, Plan Documents and this Confirmation Order.

## W.    The Plan is Insurance Neutral

The Plan is insurance neutral, as provided in Section 10.4 of the Plan (as modified in

paragraph 26 below).

### DECREES

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED

THAT:

1.    Objections. The Insurers' Objections are stricken and have not been considered

by the Court for the reasons set forth on the record on October 26, 2010. All other Objections to

25

46392/0001-6972080v8

the Plan that have not been withdrawn or waived, and all reservations of rights pertaining to confirmation of the Plan included therein, are overruled on the merits.

## PLAN

2.  Confirmation. The Plan, as amended and supplemented by the Plan Supplement, is confirmed under section 1129 of the Bankruptcy Code.

3.  Amendments. Any amendments of the Plan contained herein, in the Plan Modifications or as reflected on the record at the Confirmation Hearing meet the requirements of sections 1127(a) and (c), such amendments do not adversely change the treatment of the Claim of any creditor or Equity Interest of any equity security holder within the meaning of Bankruptcy Rule 3019, and no further solicitation or voting is required.

4.  Plan Classification Controlling. The classifications of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by the Debtor's creditors in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify, or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes, and (c) shall not be binding on the Debtor, Reorganized Leslie, the Asbestos PI Trust, or any Asbestos Insurance Entity.

5.  Definition of Debtor Released Parties. The definition of "Debtor Released Parties" as set forth in Section 1.62 of the Plan is modified to read as follows: "**Debtor Released Parties** means, collectively, the Debtor, Reorganized Leslie, the officers, directors and employees of the Debtor who were either serving in such capacities as of the Confirmation Date, or who had served in such capacities during the Chapter 11 Case, the officers, directors and

26

employees of Reorganized Leslie serving in such capacity after the Effective Date and the Debtor's and Reorganized Leslie's former officers and directors, principals, employees, agents, financial advisors, attorneys, investment bankers, accountants, consultants and other professionals, agents and any of their successors and assigns."

6. Definition of Asbestos Claimants Committee. The definition of "Asbestos Claimants Committee" as set forth in Section 1.10 of the Plan is modified to read as follows: "**Committee** means the official committee of unsecured creditors appointed in the Chapter 11 Case, as such committee may be reconstituted from time to time." All references in the Plan to the "Asbestos Claimants Committee" shall be deemed replaced with the term "Committee".

7. Schedule 3 to the Plan. Schedule 3 to the Plan shall include the following entities: BLÜCHER Metal A/S, a Denmark corporation; Kim Olofsson Safe Corporation AB, a Sweden corporation; Watts France Holding S.A.S., a France corporation; and Watts Valve (Taizhou) Co., Ltd., a China limited liability company.

8. Binding Effect. The Plan and its provisions shall be binding upon the Debtor, Reorganized Leslie, the Committee, the Future Claimants' Representative, any Entity acquiring or receiving property or a distribution under the Plan, and any holder of a Claim against or Equity Interest in the Debtor, including all governmental entities (including without limitation all taxing authorities), whether or not the Claim or Equity Interest of such holder is impaired under the Plan, whether or not the Claim or Equity Interest is Allowed, and whether or not such holder or entity has accepted the Plan.

The rights, benefits and obligations of any Entity named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity

27

(including, but not limited to, any trustee appointed for the Debtor under Chapters 7 or 11 of the Bankruptcy Code). The terms and provisions of the Plan and this Confirmation Order shall survive and remain effective after entry of any order which may be entered converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code. This Confirmation Order shall supersede any Bankruptcy Court orders issued prior to the Confirmation Date that may be inconsistent with the Confirmation Order.

9.      Vesting of Assets (11 U.S.C. § 1141(b) and (c)).  Except as otherwise provided in the Plan, Reorganized Leslie will exist after the Effective Date as a separate Entity, with all the powers of a corporation under applicable law and without prejudice, except as otherwise provided in the Amended Certificate of Incorporation and By-Laws, to any right to alter or terminate such existence (whether by merger, dissolution, or otherwise) under applicable state law. Pursuant to Section 10.1 of the Plan, except as otherwise provided in the Plan, the Plan Documents or the Confirmation Order, the property of the Estate of Leslie (except for the Leslie Contribution) shall vest in Reorganized Leslie on the Effective Date free and clear of any and all Liens, Claims, Encumbrances and other interests of any Entity. From and after the Effective Date, Reorganized Leslie may operate its business and may use, acquire, and dispose of property free of any restrictions imposed under the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court. Without limiting the generality of the foregoing, Reorganized Leslie may, without application to, or approval by, the Bankruptcy Court, pay Professional fees and expenses that Reorganized Leslie incurs after the Effective Date.

10.      Objection to Claims.  Pursuant to Section 8.2 of the Plan, Leslie or Reorganized Leslie shall be entitled to object to Claims that have been or should have been brought in the

28

Bankruptcy Court (other than Asbestos PI Claims) on or before the first (1st) anniversary of the Effective Date (unless such day is not a Business Day, in which case such deadline shall be the next Business Day thereafter), as the same may be extended from time to time by the Bankruptcy Court, and shall be authorized to settle, compromise, withdraw or litigate to judgment such objections without further approval of the Bankruptcy Court.

11.     Distributions. Other than with respect to distributions to be made to Asbestos PI Claims from the Asbestos PI Trust, Reorganized Leslie shall make all Distributions required to be made under the Plan as provided under Article VI of the Plan. All Distributions to be made on account of Asbestos PI Claims shall be made in accordance with the terms of the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures, subject to the conditions for the Trust Distribution Effective Date as set forth in Section 12.3 of the Plan having been previously satisfied.

12.     Disputed Claims. All Disputed Claims against the Debtor shall be subject to the provisions of Article VIII of the Plan. Notwithstanding any other provision of the Plan, if any portion of a Claim (other the Debtor an Asbestos PI Claim) is a Disputed Claim, no payment or Distribution provided for under the Plan shall be made on account of such Claim, unless and until such Claim becomes an Allowed Claim. All Asbestos PI Claims shall be determined and paid by the Asbestos PI Trust in accordance with Section 9.3 of the Plan, the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures; only the Asbestos PI Trust will have the right to object to and/or resolve Asbestos PI Claims; and all Asbestos PI Claims must be submitted solely to the Asbestos PI Trust for payment, which shall be in accordance with the Asbestos PI Trust Distribution Procedures.

13.     Assumption or Rejection of Executory Contracts and Unexpired Leases (11

U.S.C. § 1123(b)(2)). Pursuant to Section 7.1 of the Plan, the Debtor shall assume, as of the

Effective Date, all Executory Contracts to which the Debtor is a party, except for: (a) the

Executory Contracts specifically listed in certain Schedules to the Plan Supplement, if any,

which shall either be rejected or assumed and assigned, respectively, as described therein; and

(b) the Executory Contracts specifically addressed herein or pursuant to a Final Order of the

Bankruptcy Court entered on or before the Effective Date. The Debtor may, at any time on or

before the Effective Date, amend the Schedules to the Plan Supplement to delete therefrom or

add thereto any Executory Contract. The Debtor shall provide notice of any such amendment to

the parties to the Executory Contract(s) affected thereby and to parties on any master service list

established by the Bankruptcy Court in the Chapter 11 Case. The fact that any contract or lease

is listed in the Schedules to the Plan Supplement shall not constitute or be construed to

constitute an admission that such contract or lease is an executory contract or unexpired lease

within the meaning of section 365 of the Bankruptcy Code or that the Debtor or any successor in

interest to the Debtor (including Reorganized Leslie) has any liability thereunder. All Executory

Contracts assumed or assumed and assigned by the Debtor during the Chapter 11 Case or under

the Plan shall remain in full force and effect for the benefit of Reorganized Leslie or the

assignee thereof notwithstanding any provision in such contract or lease (including those

provisions described in sections 365(b)(2) and (1) of the Bankruptcy Code) that prohibits such

assignment or transfer or that enables or requires termination of such contract or lease. This

Confirmation Order shall constitute an order of the Bankruptcy Court approving such: (a)

rejections; (b) assumptions; or (c) assumptions and assignments, as the case may be, pursuant to

30

sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. For the avoidance of doubt, the Undertaking (defined below) is not an Executory Contract.

14.     Cure of Defaults. Pursuant to Section 7.2 of the Plan and as modified herein, except to the extent that different treatment has been agreed to by the non-Debtor party or parties to any Executory Contract to be assumed (including any Executory Contract to be assumed and assigned) pursuant to Section 7.1 of the Plan, Reorganized Leslie shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, satisfy any monetary amounts by Cure. If there is a dispute regarding (a) the nature or amount of any Cure, (b) the ability of Reorganized Leslie to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract to be assumed, or (c) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order by the Bankruptcy Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be; provided, however, that the Debtor or Reorganized Leslie, as applicable, shall be authorized to reject any Executory Contract to be deemed effective as of the day before the Effective Date, to the extent the Debtor or Reorganized Leslie, in the exercise of their sound business judgment, conclude that the amount of the Cure obligation as determined by such Final Order, renders the assumption of such Executory Contract unfavorable to the Debtor or Reorganized Leslie.

15.     Bar to Rejection Damages. Pursuant to Section 7.3 of the Plan, in the event that the rejection of an Executory Contract by the Debtor pursuant to the Plan results in damages to the non-Debtor party or parties to such Executory Contract, a claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be

31

enforceable against the Debtor, or against Reorganized Leslie after the Effective Date, or its properties or interests in property, unless a Proof of Claim with respect to such damages is filed with the Bankruptcy Court and served upon counsel for the Debtor on or before (i) if such Executory Contract is rejected pursuant to Sections 7.1 and 7.2 of the Plan, the later of: (a) thirty (30) days after entry of this Confirmation Order, and (b) thirty (30) days after the non-Debtor party receives notice of the rejection of such Executory Contract pursuant to Section 7.2 of the Plan; and (ii) if such Executory Contract is rejected pursuant to a Final Order of the Bankruptcy Court granting a motion filed by the Debtor to reject that executory contract, thirty (30) days after entry of such order.

16.     Preservation of Insurance.  Subject Section 10.4 of the Plan: nothing in the Plan, the Plan Documents, or the Confirmation Order, including the discharge and release of Leslie and the Asbestos PI Channeling Injunction, shall enlarge, diminish, impair or otherwise affect the enforceability of any Asbestos PI Insurance Contract or any other insurance policy that may provide coverage for Claims or Demands against Leslie; and all Asbestos PI Insurance Contracts and Insurance Settlement Agreements shall be assumed by the Debtor and assigned to Reorganized Leslie as of the Effective Date and the Debtor shall assign Asbestos Insurance Actions and Asbestos Insurance Rights to the Asbestos PI Trust as part of the Leslie Contribution.

17.     General Authorizations.  The Debtor and Reorganized Leslie are authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, including without limitation any notes or securities issued pursuant to the Plan.  The Debtor and Reorganized Leslie and their

32

respective directors, officers, members, agents, and attorneys, are authorized and empowered to issue, execute, deliver, file, or record any agreement, document, or security, including, without limitation, as modified, amended, and supplemented, in substantially the form included therein, and to take any action necessary or appropriate to implement, effectuate, and consummate the Plan in accordance with its terms, or take any or all corporate actions authorized to be taken pursuant to the Plan, and any release, amendment, or restatement of any bylaws, certificates of incorporation, or other organization documents of the Debtor, whether or not specifically referred to in the Plan or the Plan Documents, without further order of the Bankruptcy Court, and any or all such documents shall be accepted by each of the respective state filing offices and recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law.

18.    Transfers of Property from The Debtor to Reorganized Leslie. The transfers of property by the Debtor to Reorganized Leslie (a) are or will be legal, valid, and effective transfers of property; (b) vest or will vest Reorganized Leslie with good title to such property, except as expressly provided in the Plan or this Confirmation Order; (c) do not and will not constitute avoidable transfers under the Bankruptcy Code or under other applicable bankruptcy or non-bankruptcy law; and (d) do not and will not subject Reorganized Leslie to any liability by reason of such transfer under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, any laws affecting or effecting successor or transferee liability.

19.    Approval of Settlements, Transactions and Agreements. By virtue of this Confirmation Order, the other settlements, transactions and agreements to be effected pursuant to the Plan are hereby approved in all respects, including, without limitation, the Asbestos PI Trust Agreement, the Asbestos PI Trust Bylaws and the Asbestos PI Trust Distribution

33

Procedures. The release of CIRCOR Related Parties and Watts Related Parties with respect to Derivative Liability Asbestos PI Claims in exchange for the CIRCOR Contribution is also approved in all respects.

The terms and conditions of the Leslie Promissory Note, the Pledge Agreement and any related documents are essential to the success and feasibility of the Plan. All such documents shall constitute legal, valid, binding and authorized obligations of the parties obligated thereunder, enforceable in accordance with their terms. On the Effective Date, all of the liens and security interests granted in accordance with such documents shall be deemed approved and shall be legal, valid, binding and enforceable Lines on the collateral in accordance with the terms of each agreement.

20.      Amended Certificate of Incorporation and By-Laws.  The Amended Certificate of Incorporation and Amended By-Laws contain such provisions as are necessary to satisfy the provisions of the Plan and prohibit, to the extent necessary, the issuance of nonvoting equity securities as required by section 1123(a)(6) of the Bankruptcy Code, subject to further amendment after the Effective Date as permitted by applicable law. Except as otherwise provided in the Plan, the Amended Certificate of Incorporation and Amended By-Laws in accordance with their respective terms contain indemnification provisions applicable to the member, manager and employees of Reorganized Leslie and such other Entities as may be deemed appropriate in the discretion of Reorganized Leslie.

21.      Governmental Approvals Not Required.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or

34

modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

22.     Exemption from Transfer Taxes.  Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan shall be exempt from all taxes as provided in such section 1146(a).

23.     Administrative Expense Claims.  All Administrative Expense Requests must be made by application filed with the Bankruptcy Court and served on counsel for the Debtor no later than the Administrative Expense Claims Bar Date which shall be sixty (60) days after the Effective Date or the First Business day following such date.  In the event that the Debtor or Reorganized Leslie objects to an Administrative Expense Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Expense Claim.  Notwithstanding the foregoing, (a) no application seeking payment of an Administrative Expense Claim need be filed with respect to an undisputed post-petition obligation which was paid or is payable by the Debtor in the ordinary course of business; provided, however, that in no event shall a post-petition obligation that is contingent or disputed and subject to liquidation through pending or prospective litigation, including, but not limited to, obligations arising from personal injury, property damage, products liability, consumer complaints, employment law (excluding claims arising under workers' compensation law), secondary payor liability, or any other disputed legal or equitable claim based on tort, statute, contract, equity, or common law, be considered to be an

obligation which is payable in the ordinary course of business; and (b) no application seeking payment of an Administrative Expense Claim need be filed with respect to Cure owing under an executory contract or unexpired lease if the amount of Cure is fixed by order of the Bankruptcy Court.

24.     Reorganized Leslie, in its sole and absolute discretion, may settle Administrative Expense Claims in the ordinary course of business without further Bankruptcy Court approval. Leslie or Reorganized Leslie shall have the right to object to any Administrative Expense Claim by the later of: (a) one hundred and eighty (180) days after the Effective Date, subject to such extensions as may be granted from time to time by the Bankruptcy Court; and (b) thirty (30) days after the date such Administrative Expense Claim is filed. Unless Leslie or Reorganized Leslie objects to an Administrative Expense Claim, such Claim shall be deemed allowed in the amount requested. In the event that Leslie or Reorganized Leslie timely objects to an Administrative Expense Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Administrative Expense Claim should be Allowed and, if so, in what amount.

25.     Professional Fee Claims. Notwithstanding anything to the contrary in the Confirmation Order, all entities seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330 or 503 of the Bankruptcy Code (the "Professional Fee Claims") shall (a) file no later than sixty days (60) days after the Effective Date, their respective applications for final allowance of compensation for services rendered and reimbursement of expenses incurred; and (b) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court (i) upon the later of (A) the Effective Date and (B) the first Business Day after the date that is thirty

36

46392/0001-6972080v8

(30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; or (ii) upon such other terms as may be mutually agreed upon by such holder and Reorganized Leslie. Objections to any requests for Professional Fee Claims can be filed by the United States Trustee and any party in interest so long as such objections are filed within the time frame set forth in the notice served with the application seeking payment of Professional Fee Claims, unless an extension is granted by the applicant. Reorganized Leslie is authorized to pay compensation for Professional services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course of business and without the need for Bankruptcy Court approval.

26.     Insurance Neutrality. Section 10.4 of the Plan is modified to read as follows:

"**10.4  Insurance Neutrality**. Notwithstanding anything in the Plan, the Plan Documents, or the Confirmation Order or any other order of the Court to the contrary (including, without limitation, any other provision that purports to be preemptory or supervening or grants a release), on the Effective Date, each of the Asbestos PI Insurance Contracts or Insurance Settlement Agreements shall, as applicable, either be (a) deemed assumed to the extent such Asbestos PI Insurance Contracts or Insurance Settlement Agreements were executory contracts of Leslie or Reorganized Leslie pursuant to section 365 of the Bankruptcy Code or (b) continued in accordance with its terms, such that each of the parties' contractual, legal, and equitable rights under each such assumed or continued Asbestos PI Insurance Contract or Insurance Settlement Agreement shall remain unaltered.

Except as otherwise provided in this Article 10.4, nothing in the Plan, the Plan Documents, or the Confirmation Order or any other order of the Court to the contrary (including, without limitation, any other provision that purports to be preemptory or supervening

37

or grants a release): (a) shall affect, impair or prejudice the rights and defenses of the Asbestos Insurance Entities, Leslie, Reorganized Leslie, or any other insureds under the Asbestos PI Insurance Contracts in any manner; (b) shall in any way operate to, or have the effect of, impairing or having any res judicata, collateral estoppel, or other preclusive effect on any party's legal, equitable, or contractual rights or obligations under any Asbestos PI Insurance Contract in any respect; or (c) shall otherwise determine the applicability or non-applicability of any provision of any Asbestos PI Insurance Contract and any such rights and obligations shall be determined under Asbestos PI Insurance Contracts and applicable law. Additionally, any Asbestos Insurance Action against any Asbestos Insurance Entity related to any Asbestos PI Insurance Contract shall be handled in the forum specified in the relevant Asbestos PI Insurance Contract or, if no forum is so specified, in a court of competent jurisdiction other than the Bankruptcy Court; provided, however, that nothing herein waives any right of the Asbestos PI Trust, Leslie, Reorganized Leslie, or the Asbestos Insurance Entities to require arbitration to the extent the relevant Asbestos PI Insurance Contract provides for such.

To the extent it becomes necessary to enforce the terms of this Article 10.4 in any Asbestos Insurance Action against any Asbestos Insurance Entity related to any Asbestos PI Insurance Contract, the party seeking to enforce this article may offer or tender the terms of this Article 10.4 to the judge presiding over such Asbestos Insurance Action, and the parties to the Asbestos Insurance Action shall stipulate and agree that this Article 10.4 is binding upon them and was approved by the Bankruptcy Court in the Confirmation Order.

Except as provided in this Article 10.4, with respect to and for purposes of construing and applying any Asbestos PI Insurance Contract to resolve any Asbestos Insurance Action, nothing in the Plan, the Plan Documents, or the Confirmation Order or any other judgment, order,

38

46392/0001-6972080v8

finding of fact, conclusion of law, determination, ruling or statement (written or oral) made or entered by the Bankruptcy Court or by any other court exercising jurisdiction over the Bankruptcy Case, including, without limitation, any judgment, order, writ, or opinion entered on appeal from any of the foregoing, shall constitute an adjudication, judgment, trial, hearing on the merits, finding, conclusion, or other determination; or evidence or suggestion of any such determination, establishing or relating to the liability (in the aggregate or otherwise) or coverage obligation of any Asbestos Insurance Entity for any Claim(s).

Notwithstanding anything to the contrary in the Plan or Confirmation Order, no exculpation, release, injunction, or discharge provisions in the Plan or Confirmation Order shall affect or limit the rights or obligations of, or protections afforded, Leslie, Reorganized Leslie, or Asbestos Insurance Entities under this Article 10.4 in regards to any Asbestos Insurance Action arising under an Asbestos PI Insurance Contracts."

27.    Settling Asbestos Insurance Entities.  The Entities listed on Exhibit F to the Plan are Settling Asbestos Insurance Entities pursuant to the Plan and shall have the rights and benefits entitled to such Settling Asbestos Insurance Entities under the Plan.  The Debtor shall have until the later of the Confirmation Date or 40 days after entry of this Confirmation Order to add Entities to Exhibit F to the Plan.

28.    Dissolution of Committee.  Effective on the Effective Date, any committee appointed in the Chapter 11 Case shall be dissolved automatically, whereupon its members, Professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Case and under the Bankruptcy Code, except with respect to applications for compensation by Professionals or reimbursement of expenses incurred as a member of an official committee and any motions or other actions seeking enforcement or implementation of

39

the provisions of the Plan or the Confirmation Order or pending appeals of any other order entered in the Chapter 11 Case, including any appeal of the Confirmation Order. The Committee may, at its option, participate in any appeal of the Confirmation Order. Reorganized Leslie shall pay the reasonable fees and costs incurred by the Committee in connection with any appeal of the Confirmation Order.

29. Continuation of Future Claimants' Representative. From and after the Effective Date, the Future Claimants' Representative shall continue to serve as provided in the Plan and the Asbestos PI Trust Agreement, to perform the functions specified and required therein. The Future Claimants' Representative also may, at his option, participate in any: (a) appeal of the Confirmation Order; (b) hearing on a claim for compensation or reimbursement of a Professional; or (c) adversary proceeding pending on the Effective Date in which the Future Claimants' Representative is a party. Reorganized Leslie shall pay the reasonable fees and costs incurred by the Future Claimants' Representative in connection with any appeal of the Confirmation Order.

## DISCHARGE AND INJUNCTIONS

30. Discharge. Pursuant to Section 11.1 of the Plan, except as specifically provided for in Sections 4.1, 4.2, 4.3 and 11.10 of the Plan, pursuant to section 1141(d)(1)(A) of the Bankruptcy Code, confirmation of the Plan shall discharge Leslie and Reorganized Leslie from any and all Claims of any nature whatsoever, including, without limitation, all Claims and liabilities that arose before the Effective Date and all debts of the kind specified in sections 502(g), 502(h) and 502(i) of the Bankruptcy Code, whether or not: (a) a Proof of Claim based on such Claim was filed under section 501 of the Bankruptcy Code, or such Claim was listed on any Schedules of Leslie; (b) such Claim is or was allowed under section 502 of the Bankruptcy

40

46392/0001-6972080v8

Code; or (c) the holder of such Claim has voted on or accepted the Plan. Except as specifically provided for in Sections 4.1, 4.2, 4.3 and 11.8 of the Plan, as of the Effective Date the rights provided in the Plan shall be in exchange for and in complete satisfaction, settlement and discharge of all Claims against Leslie or Reorganized Leslie or any of their respective assets and properties.

31.     Injunction.  Pursuant to Section 11.2 of the Plan, except as specifically provided for in Sections 4.1, 4.2, 4.3 and 11.10 of the Plan, all persons or Entities who have held, hold or may hold Claims or Demands are permanently enjoined, from and after the Effective Date, from: (a) commencing or continuing in any manner any action or other proceeding of any kind against Reorganized Leslie with respect to such Claim or Demand; (b) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order against Reorganized Leslie with respect to such Claim or Demand; (c) creating, perfecting, or enforcing any Encumbrance of any kind against Reorganized Leslie or against the property or interests in property of Reorganized Leslie with respect to such Claim or Demand; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due to Reorganized Leslie or against the property or interests in property of Reorganized Leslie, with respect to such Claim or Demand; and (e) pursuing any Claim or Demand released pursuant to Article XI of the Plan.

32.     Exculpation.  Pursuant to Section 11.3 of the Plan, none of the Released Parties shall have or incur any liability to any holder of a Claim or Equity Interest, including, without limitation, the Asbestos PI Claims, for any act or omission in connection with, related to, or arising out of: (a) the Chapter 11 Case; (b) pursuit of confirmation of the Plan; (c) consummation of the Plan, or administration of the Plan or the property to be distributed under

41

the Plan or the Asbestos PI Trust Distribution Procedures; (d) the Plan; or (e) the negotiation, formulation and preparation of the Plan, the Plan Documents, and any of the terms and/or settlements and compromises reflected in the Plan and the Plan Documents, except for willful misconduct or gross negligence as determined by a Final Order, and, in all respects, Leslie, Reorganized Leslie, and each of the other Released Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and the Plan Documents.

33. Release by Debtor Released Parties of Released Parties. Pursuant to Section 11.4 of the Plan, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, Reorganized Leslie, any other Debtor Released Party and any Entity seeking to exercise the rights of the Estate, in each case, whether individually or collectively, including, without limitation, any successor to the Debtor or any Estate representative appointed or selected pursuant to the applicable provisions of the Bankruptcy Code, shall be deemed to forever release, waive and discharge the Released Parties of all claims, obligations, suits, judgments, remedies, damages, Demands, debts, rights, Causes of Action and liabilities which the Debtor, any other Debtor Released Parties of the Estate are entitled to assert including, without limitation, any Derivative Liability Asbestos PI Claims and Derivative Liability Claims asserted on behalf of the Debtor, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission, transaction, or occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Estate, the conduct of the Debtor's business, the Chapter 11 Case, the Plan or Reorganized Leslie (other than the rights under the Plan, the Plan Documents, and the

42

contracts, instruments, releases and other agreements or documents delivered or to be delivered hereunder); provided, however, that nothing contained in the Plan is intended to operate as a release of any potential claims based upon gross negligence or willful misconduct. Notwithstanding anything contained in Section 11.4 of the Plan, nothing contained in the Plan shall discharge or release any Claim of or Demand by any of the Released Parties, the Asbestos PI Trust or any holder of an Asbestos PI Claim against any Asbestos Insurance Entity.

34.     Release by Non-Debtor Released Parties of Released Parties. Pursuant to Section 11.5 of the Plan, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Non-Debtor Released Parties shall be deemed to forever release, waive and discharge the Released Parties and the Asbestos PI Trust of and from all claims, obligations, suits, judgments, remedies, damages, Demands, debts, rights, Causes of Action and liabilities which the Non-Debtor Released Parties are entitled to assert, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission, transaction, or occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Estate, the conduct of the Debtor's business, the Chapter 11 Case, the Plan or Reorganized Leslie (other than the rights under the Plan, the Plan Documents, and the contracts, instruments, releases and other agreements or documents delivered or to be delivered hereunder); provided, however, that nothing contained in the Plan is intended to operate as a release of any potential claims based upon gross negligence or willful misconduct. Notwithstanding anything contained in Section 11.5 of the Plan, nothing contained in the Plan shall discharge or release any Claim of or Demand by any of the Released Parties, the Asbestos PI Trust or any holder of an Asbestos PI Claim against any Asbestos Insurance

43

Entity. Notwithstanding anything contained in Section 11.5 of the Plan, or elsewhere in the Plan (including but not limited to in Sections 9.3(j), 10.6, 11.3 and 11.7) or the Plan Documents, nothing contained in the Plan, the Plan Documents or this Confirmation Order shall discharge, release, impair, enjoin, or prejudice in any way any claim, rights, or demands that any of the Watts Related Parties have asserted or may assert under (1) the Distribution Agreement dated as of October 1, 1999 by and between Watts Industries, Inc. and CIRCOR or (2) any insurance policy or contract providing coverage to any or all of the Watts Related Parties.

35. Release by Holders of Claims and Equity Interests. Pursuant to Section 11.6 of the Plan, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each holder of a Claim or Demand against, or Equity Interest in, Leslie, who receives a Distribution pursuant to the Plan shall be deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, remedies, damages, Demands, debts, rights, Causes of Action and liabilities whatsoever against the Released Parties whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission, transaction, or occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Estate, the conduct of the Debtor's business, the Chapter 11 Case, the Plan or Reorganized Leslie (other than the rights under the Plan, the Plan Documents, and the contracts, instruments, releases and other agreements or documents delivered or to be delivered hereunder), including, for the avoidance of doubt, any and all Causes of Action that the holder of an Asbestos PI Claim, the Asbestos PI Trust or the Future Claimants Representative did commence or could have commenced against any officer or director of Leslie (serving in such capacity) that is based upon or arising from any acts or

44

omissions of such officer or director occurring prior to the Effective Date on account of such Asbestos PI Claim, to the fullest extent permitted under section 524(e) of the Bankruptcy Code and applicable law (as now in effect or subsequently extended); provided, however, that nothing contained in the Plan is intended to operate as a release of (a) any potential claims based upon gross negligence or willful misconduct or (b) any claim by any federal, state or local authority under the Internal Revenue Code or other tax regulation or any applicable environmental or criminal laws.

36. Releases, Exculpations, and Injunctions. The release, exculpation, and injunction provisions contained in the Plan are fair and equitable, are given for valuable consideration, and are in the best interests of the Debtor and its chapter 11 estate, and such provisions shall be effective and binding upon all persons and entities. In addition, the releases of and by non-Debtors under the Plan are fair to holders of Claims and Interests and are necessary to the proposed reorganization, and set forth the proper standard of liability, thereby satisfying the requirements of PWS Holding Corp., 228 F.3d 224, 246 (3d Cir. 2000), In re Continental Airlines, Inc., 203 F.3d 203, 214 (3d Cir. 2000), and In re Zenith Electronics Corp., 241 B.R. 92, 110-11 (Bankr. D. Del. 1999).

37. Termination of Injunctions and Automatic Stay. Pursuant to Section 10.5 of the Plan, all of the injunctions and/or stays in existence immediately prior to the Confirmation Date provided for in or in connection with the Chapter 11 Case, whether pursuant to section 105, 362, or any other provision of the Bankruptcy Code, the Bankruptcy Rules or other applicable law, including, but not limited to, the injunction provided for by the Preliminary Injunction Order shall remain in full force and effect until the injunctions set forth in the Plan become effective pursuant to a Final Order. In addition, on and after the Confirmation Date, Reorganized Leslie

45

may seek such further orders as it may deem necessary or appropriate to preserve the status quo during the time between the Confirmation Date and the Effective Date.

38.     Each of the injunctions contained in the Plan or the Confirmation Order shall become effective on the Effective Date and shall continue in effect at all times thereafter unless otherwise provided by the Plan or the Confirmation Order. All actions of the type or nature of those to be enjoined by such injunctions shall be enjoined during the period between the Confirmation Date and the Effective Date.

39.     Asbestos PI Channeling Injunction. The Asbestos PI Channeling Injunction is essential to the Plan and the Debtor's reorganization efforts, and is to be implemented in accordance with the Plan and the Asbestos PI Trust. Pursuant to Section 11.7 of the Plan, section 524(g) of the Bankruptcy Code and this Confirmation Order, and subject to Section 11.8 of the Plan, the sole recourse of any holder of an Asbestos PI Claim on account of such Asbestos PI Claim shall be against the Asbestos PI Trust. Each such holder shall be and is enjoined from taking legal action directed against Leslie, Reorganized Leslie, any of the CIRCOR Related Parties or Watts Related Parties, or any other Asbestos Protected Party, or their respective property, for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery relating to such Asbestos PI Claim.

40.     Limitations of Injunctions. Pursuant to Section 11.8 of the Plan, the releases set forth in the Plan and the injunction set forth in Section 11.7 above shall not enjoin: (a) the rights of Entities to the treatment accorded to them under Articles III and IV of the Plan, as applicable, including the rights of Entities with Asbestos PI Claims to assert such Claims or Demands against the Asbestos PI Trust in accordance with the Asbestos PI Trust Distribution Procedures;

46

and (b) the rights of Entities to assert any Claim, debt, obligation, or liability for payment of Asbestos PI Trust Expenses against the Asbestos PI Trust.

## THE ASBESTOS PI TRUST

41. Creation of Asbestos PI Trust. Pursuant to Section 9.3 of the Plan, on the Effective Date, the Asbestos PI Trust shall be created in accordance with the Plan Documents, the Asbestos PI Trust Documents and section 524(g) of the Bankruptcy Code. The Asbestos PI Trust is intended to constitute a "qualified settlement fund" within the meaning of section 468B of the Internal Revenue Code and the regulations issued thereunder. The purpose of the Asbestos PI Trust shall be to assume, Liquidate and, after the Trust Distribution Effective Date, resolve all liabilities determined to arise from, or relate to, the Asbestos PI Claims (whether existing as of the Effective Date or arising at any time thereafter) and, after the Trust Distribution Effective Date, to use the Asbestos PI Trust Assets to pay holders of Asbestos PI Claims in accordance with the terms of the Asbestos PI Trust Agreement, the Asbestos PI Trust Distribution Procedures, the Plan and the Confirmation Order, and in such a way as to provide reasonable assurance that the Asbestos PI Trust will value, and be in a financial position to pay, present Asbestos PI Claims and future Demands that involve similar claims in substantially the same manner, and to otherwise comply in all respects with the requirements of section 524(g)(2)(B) of the Bankruptcy Code. The Asbestos PI Trust shall have no liability for any Claim other than an Asbestos PI Claim, which shall be determined and, after the Trust Distribution Effective Date, paid in accordance with the terms, provisions and procedures of the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures. On the Effective Date, all right, title and interest in and to the Asbestos PI Trust Assets, and any proceeds thereof, will be transferred to, and vested in, the Asbestos PI Trust, free and clear of all

47

Claims, Demands, Equity Interests, Encumbrances and other interests of any Entity without any further action of the Bankruptcy Court or any Entity, but subject to the remaining provisions of Section 9.3 of the Plan.

42. Appointment of Asbestos PI Trustee. As set forth in the Plan Supplement, the Asbestos PI Trustee shall be The Honorable Alfred M. Wolin (ret'd).

43. Creation of the Asbestos PI Trust Advisory Committee. On the Effective Date, there shall be formed an Asbestos PI Trust Advisory Committee which will serve in accordance with the Asbestos PI Trust Agreement. The initial members of the Asbestos PI Trust Advisory Committee shall be: Alan Brayton, John Cooney, John A. Baden, IV, Peter A. Kraus and Steven Kazan.

44. Contributions to the Asbestos PI Trust. On the Effective Date, Leslie shall make the Leslie Contribution and CIRCOR shall make the CIRCOR Asbestos PI Trust Contribution, to the Asbestos PI Trust. The CIRCOR Asbestos PI Trust Contribution constitutes substantial assets of the Plan and the reorganization, is essential and necessary to the feasibility of the Plan and the successful reorganization of the Debtor and constitutes a sufficient basis upon which to provide the CIRCOR Related Parties and Watts Related Parties with the protections afforded to them under the Plan, Plan Documents and this Confirmation Order.

45. Leslie Promissory Note. On the Effective Date, as part of the Leslie Contribution, Reorganized Leslie shall execute and deliver to the Asbestos PI Trust the Leslie Promissory Note. As security for the Leslie Promissory Note, on the Effective Date, CIRCOR shall execute and deliver to the Asbestos PI Trust the CIRCOR Pledge.

46. Limitation on Incurrence of Costs. During the period on and after the Effective Date but prior to the Trust Distribution Effective Date, the Asbestos PI Trust shall not incur

48

46392/0001-6972080v8

costs (defined broadly to include all obligations, including salaries, disbursements, expenses, and all other costs) in an aggregate total amount greater than $500,000.

47.     Preservation of Insurance Claims.  The discharge, release, exculpation and indemnification of the Released Parties pursuant to the Plan shall neither diminish nor impair the enforceability of any Asbestos PI Insurance Contract.  The Asbestos PI Trust is, and shall be deemed to be for all purposes, including, but not limited to for purposes of insurance and indemnity, the successor to Leslie in respect of all Asbestos PI Claims.  An Asbestos PI Claim determined to be payable pursuant to the provisions governing the Asbestos PI Trust (as successor for all purposes to the liabilities of Leslie in respect of Asbestos PI Claims) shall be liquidated by the Asbestos PI Trust in accordance with the Asbestos PI Trust Distribution Procedures.

48.     Failure of Trust Distribution Effective Date.  If the Confirmation Order is vacated, modified, or reversed after its affirmance or issuance by the District Court, then the Debtor, CIRCOR, the Asbestos PI Trust Advisory Committee and the Future Claimants' Representative shall negotiate in good faith to determine if they can agree upon a modified Plan acceptable to all such parties.  If the parties are unable to do so within 90 days from the date of such vacating, modification, or reversal of the Confirmation Order (which period may be extended by the agreement of the Debtor, CIRCOR, the Asbestos PI Trust Advisory Committee, and Future Claimants' Representative, filed with the Bankruptcy Court), then the following shall thereupon occur: (i) the Asbestos PI Trust shall immediately return the Leslie Promissory Note to Leslie; (ii) the Pledge Agreement shall be null and void; (iii) the Asbestos PI Trust shall immediately transfer all of its assets to CIRCOR, except for the Leslie Promissory Note which shall be returned to Leslie; (iv) all rights and interests relating to insurance previously

transferred by the Debtor to the Asbestos PI Trust shall immediately and automatically revert to the Debtor; (v) the Asbestos PI Trust shall immediately thereafter be dissolved and its determinations with respect to any Asbestos PI Claims shall be deemed void; (vi) any Asbestos Records shall be returned to CIRCOR and/or Leslie, as applicable; and (vii) each of the injunctions and releases contained in the Plan or the Confirmation Order shall be deemed terminated.

49.     Transfer of Claims and Demands to the Asbestos PI Trust.  On the Effective Date, all liabilities, obligations, and responsibilities relating to all Asbestos PI Claims and Demands shall be transferred and channeled to the Asbestos PI Trust and shall be satisfied solely by the assets held by the Asbestos PI Trust.  The Asbestos PI Trust shall have no liability for any Claims other than Asbestos PI Claims, and no Claims other than Asbestos PI Claims shall be transferred and channeled to the Asbestos PI Trust.

50.     Discharge of Liabilities to Holders of Asbestos PI Claims.  The transfer to, vesting in, and assumption by the Asbestos PI Trust of the Asbestos PI Trust Assets, on or after the Effective Date, as contemplated by the Plan, and the occurrence of the Trust Distribution Effective Date shall, among other things, discharge all obligations and liabilities of all Asbestos Protected Parties for and in respect of all Asbestos PI Claims as of the Trust Distribution Effective Date.

51.     Indemnification by the Asbestos PI Trust.  As and to the extent provided in the Asbestos PI Trust Indemnification Agreement, the Asbestos PI Trust shall indemnify and hold harmless each of the following Entities for any liability, or alleged liability, arising out of, or resulting from, an Asbestos PI Claim: (i) Leslie and Reorganized Leslie; (ii) any CIRCOR

Related Parties; (iii) any Watts Related Parties; and (iv) any current or former Representative of any of the above, in their capacities as such.

52.    Books and Records. The Asbestos Records Cooperation Agreement shall become effective on the Effective Date, and the Asbestos Records shall be treated in accordance therewith.

53.    Injunction. Notwithstanding any other provision of the Plan or the Confirmation Order that might be construed to be to the contrary, the Asbestos PI Trust is hereby prohibited and permanently enjoined from seeking to recover (on its own behalf or on behalf of its beneficiaries) from any Settling Insurer any insurance coverage provided by the Settling Insurer that has been released by the Debtor pursuant to a settlement agreement, including the settlement agreements listed in Exhibit F to the Plan.

## RESOLUTION OF OBJECTIONS

54.    Paragraphs 55-59 contain language requested by parties that asserted formal or informal objections to the Plan.

55.    Department of Justice. Nothing in the Confirmation Order or the Plan discharges, releases, or precludes any claim, liability, or cause of action of a governmental unit, or divests any court, commission, or tribunal of jurisdiction over any liabilities asserted by a governmental unit, including jurisdiction to determine whether such liabilities are barred by the Confirmation Order, the Plan, or the Bankruptcy Code. Notwithstanding any other provision in the Confirmation Order or the Plan, governmental units may pursue police and regulatory actions or proceedings with respect to the Released Parties in the manner, and by the administrative or judicial tribunals, in which the governmental units could have pursued such actions or proceedings if the Chapter 11 Case had never been commenced.

56.     Pension Benefit Guaranty Corporation.  No provision contained in the Plan, the Confirmation Order, or section 1141 of the Bankruptcy Code, shall be construed as discharging, releasing or relieving any party, in any capacity, from any liability with respect to the Pension Plan under any law, government policy or regulatory provision. PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability against any party as a result of the Plan's provisions for satisfaction, release and discharge of claims.

57.     United States Department of Defense.  Notwithstanding any provision in the Plan, the Confirmation Order and any implementing Plan documents, including but not limited to notices of assumption and assignment of executory contracts (collectively, "Documents"), any licenses, leases, authorizations, contracts, agreements or other interests of the federal government (collectively "federal interests") shall be treated, determined and administered in the ordinary course of business as if the debtor's bankruptcy case was never filed and the debtor and Reorganized Leslie shall comply with all applicable non-bankruptcy law, federal regulations and statutes.  Moreover, without limiting the foregoing, nothing in the Documents shall be interpreted to set cure amounts or to require the government to novate or otherwise consent to the transfer of any federal interests.  The government shall not be required to file any pre-petition or post-petition claims with respect to the federal interests in the bankruptcy case.  The government's rights to offset or recoup any amounts due under, or relating to, any federal interests are expressly preserved.

58.     State of Michigan Department of Treasury.  Nothing in the Plan will limit or enjoin the collection of tax debts due to the Michigan Department of Treasury from non-debtors. The Debtor or Reorganized Leslie, as applicable, will pay any Allowed Priority Tax Claim of the Michigan Department of Treasury within 30 (thirty) days subsequent to the date any such

priority tax claim becomes an Allowed Claim (as defined in the Plan), including accrued interest at the rate of 4.25% annually from the Effective Date until the payment is made. Upon the failure of the Debtor or Reorganized Leslie, as applicable, to make any payments due to the Michigan Department of Treasury on account of any Allowed Priority Tax Claim that is not cured within 30 days of a written notice of default, the Michigan Department of Treasury may exercise all rights and remedies available under non-bankruptcy laws for the collection of its entire claim and/or seek appropriate relief in this Court.

59.     Estate of Richard Merrill. Nothing in this Confirmation Order, the Plan, or the Plan Documents shall (1) prevent the Estate of Richard Merrill from litigating to conclusion its lawsuit against Leslie Controls, Inc., currently pending as Case No. S187957 in the California Supreme Court, or (2) impact any applicable state law or contract rights that the Estate of Richard Merrill may have pursuant to the supersedeas bond, otherwise known as an "Undertaking Under Section 917.1 C.C.P." (the "Undertaking") as filed with the Los Angeles Superior Court in on August 24, 2007 in Case No. BC352170; provided, for the avoidance of doubt, that if the Estate of Richard Merrill obtains a final, enforceable judgment against Leslie Controls, Inc., such judgment may be enforced only as against such Undertaking and not against any Asbestos Protected Party. However, if such Undertaking is not sufficient to satisfy such final enforceable judgment, or such Undertaking is determined to have lapsed or to be unenforceable for any reason, then such final enforceable judgment may be enforced against the Asbestos PI Trust as a Class 4, Asbestos PI Claim in the full unsatisfied amount of such final enforceable judgment, subject to the Payment Percentage set forth in the Asbestos PI Trust Distribution Procedures. Any Claims, Demands, or allegations against Leslie Controls, Inc., or CIRCOR International, Inc., relating to such Undertaking, whether sounding in tort, or under

contract, or implied by law, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other theory of law, equity, or admiralty, shall be an Indirect Asbestos PI Claim and channeled exclusively to and assumed by the Asbestos PI Trust in accordance with, and to the extent set forth in, the applicable Plan Documents. The defense of the pending lawsuit by the Estate of Richard Merrill against Leslie Controls, Inc. shall be directed and paid for by Reorganized Leslie, provided that the Asbestos PI Trust shall have the right, at its own expense, to reasonably consult with counsel retained by Reorganized Leslie to defend the lawsuit.

## MISCELLANEOUS

60.    Nonoccurrence of Effective Date.    In the event that Leslie determines it is appropriate, after consultation with and consent by CIRCOR, the Future Claimants' Representative and the Committee, prior to the Effective Date, upon notification submitted by Leslie to the Bankruptcy Court: (A) the Confirmation Order shall be vacated; (B) no Distributions under the Plan shall be made; and (C) Leslie and all holders of Claims against and Equity Interests in Leslie shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred. If the Confirmation Order is vacated pursuant to Section 12.5 of the Plan, nothing contained in the Plan shall: (A) constitute or be deemed a waiver or release of any Claims or Equity Interests by, against, or in Leslie or any other Entity; or (B) prejudice in any manner the rights of Leslie or any other Entity in the Chapter 11 Case or any other or further proceedings involving Leslie.

61.    Modification of Confirmation Order Without Consent.    Pursuant to section 524(g)(i)(A) of the Bankruptcy Code, the District Court must affirm the Asbestos PI Channeling Injunction as a condition precedent to the Effective Date of the Plan. In the event that the

46392/0001-6972080v8

District Court modifies the Plan or this Confirmation Order without the consent of CIRCOR or the Debtor, CIRCOR or the Debtor shall have the opportunity to withdraw its support for the Plan, and upon notification submitted by CIRCOR or the Debtor to the Bankruptcy Court: (A) this Confirmation Order shall be vacated; (B) no Distributions under the Plan shall be made; and (C) the Debtor, all holders of Claims against and Equity Interests in the Debtor, and Asbestos Insurance Entities shall be restored to the *status quo ante* as of the day immediately prior to the commencement of the Confirmation Hearing as though the Confirmation Hearing never occurred; provided, that, nothing contained in the Plan shall: (A) constitute or be deemed a waiver or release of any Claims or Equity Interests by, against, or in the Debtor or any other Entity; or (B) prejudice in any manner the rights of the Debtor or any other Entity in the Chapter 11 Case or any other or further proceedings involving the Debtor.

62.     Notice of Entry of Confirmation Order and Effective Date. The Debtor and its authorized agent shall serve notice of entry of this Confirmation Order, substantially in the form annexed hereto as Exhibit A, which form is hereby approved, on all creditors of the Debtor as of the date hereof, and other parties in interest, within five (5) business days of the Effective Date.

63.     Authorization to File Conformed Plan. The Debtor is authorized to file a conformed Plan, dated on the date hereof, that incorporates the amendments to the Plan within thirty (30) days of the entry of this Confirmation Order.

64.     Applicable Non-Bankruptcy Law. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan, the Plan Supplement, and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

65.     Final Order. This Confirmation Order shall become a final order in accordance with Section 1.81 of the Plan.

66.     Severability. Each term and provision of the Plan, as it may have been altered or interpreted by the Bankruptcy Court in accordance with Section 14.10 of the Plan, is valid and enforceable pursuant to its terms.

67.     Conflicts between Order and Plan. To the extent of any inconsistency between the provisions of the Plan and this Confirmation Order, the terms and conditions contained in this Confirmation Order shall govern. The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent unless expressly stated by further order of this Court.

68.     Superseder of Confirmation Order. This Confirmation Order shall supersede any Bankruptcy Court orders issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.

56

## STANDING OF INSURERS

69.     After due deliberation and for the reasons set forth on the record at the hearing

held on October 26, 2010, the Motion to Strike is granted in its entirety. The Plan, with the

insurance neutrality language approved by this Court in paragraph 26 herein, is insurance

neutral. Accordingly, the Insurers do not have standing to be heard on any issues relating to

confirmation of the Plan, including the Insurers' Objections, and, as a result, the Court has not

considered the Insurers' Objections.

## MOTIONS IN LIMINE

70.     The Motions in Limine are denied as moot.

## REPORT AND RECOMMENDATION TO THE DISTRICT COURT

71.     To the extent required under 28 U.S.C. § 157(d), this Court hereby reports to the

District Court and recommends that the District Court enter an order issuing and affirming the

Asbestos PI Channeling Injunction set forth in the Plan and paragraph 39 (Asbestos PI

Channeling Injunction) of this Confirmation Order and adopting the findings of fact and

conclusions of law found in Section U (Plan Compliance with Requirements of Section 524(g))

of this Confirmation Order pursuant to section 524(g)(3) of this Bankruptcy Code.

Dated: October  2ξ , 2010
        Wilmington, Delaware


_____
The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

46392/0001-6972080v8

**EXHIBIT A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                    :    Chapter 11
                                          :
LESLIE CONTROLS, INC.,                    :    Case No. 10-12199 (CSS)
                                          :
         Debtor.[1]                       :
                                          :

## NOTICE OF (I) ENTRY OF ORDER CONFIRMING FIRST AMENDED PLAN OF REORGANIZATION OF LESLIE CONTROLS, INC. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, (II) EFFECTIVE DATE OF FIRST AMENDED PLAN AND (III) BAR DATES FOR FILING ADMINISTRATIVE EXPENSE CLAIMS AND CONTRACT REJECTION DAMAGES CLAIMS

### PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      **Confirmation of Plan.** On _____ __, 2010, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order (the "Confirmation Order") confirming the First Amended Plan of Reorganization of Leslie Controls, Inc. Under Chapter 11 of the Bankruptcy Code, dated as of August 20, 2010 (as amended or modified, the "Plan") in the Chapter 11 case of the above-captioned debtor and debtor-in-possession (the "Debtor"). Unless otherwise defined herein, capitalized terms used in this Notice shall have the meanings ascribed to them in the Plan.

2.      **Effective Date.** On_____ __, 2010, Plan became effective in accordance with its terms as set forth in Section 12.2 of the Plan (the "Effective Date").

3.      **Bar Date for Administrative Expense Claims.** All Administrative Expense Requests must be made by application filed with the Bankruptcy Court and served on counsel for the Debtor no later than _____ ___, 201_ which shall be sixty (60) days after the Effective Date. In the event that the Debtor or Reorganized Leslie objects to an Administrative Expense Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Expense Claim. Notwithstanding the foregoing, (a) no application seeking payment of an Administrative Expense Claim need be filed with respect to an undisputed post-petition obligation which was paid or is payable by the Debtor in the ordinary course of business; provided, however, that in no event shall a post-petition obligation that is contingent or disputed and subject to liquidation through pending or prospective litigation, including, but not limited to, obligations arising from personal injury, property damage, products liability, consumer complaints, employment law (excluding claims arising under workers' compensation law), secondary payor liability, or any other disputed legal or equitable claim based on tort, statute, contract, equity, or common law, be considered to be an obligation which is payable in the ordinary course of business; and (b) no application seeking payment of an Administrative Expense Claim need be filed with respect to Cure owing under an executory contract or unexpired lease if the amount of Cure is fixed by order of the Bankruptcy Court.

4.      **Professional Fee Claims.** All entities seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330 or 503 of the Bankruptcy Code (the "Professional Fee Claims") shall file no later than _____ ___, 201_, which shall be sixty days (60) days after the Effective Date, their respective applications for final allowance of compensation for services rendered and reimbursement of expenses incurred.

5.      **Cure of Defaults.** Except to the extent that different treatment has been agreed to by the non-Debtor party or parties to any Executory Contract to be assumed (including any Executory Contract to be

---

[1] The last four digits of the Debtor's federal tax identification number are 3780.

assumed and assigned) pursuant to Section 7.1 of the Plan, Reorganized Leslie shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, satisfy any monetary amounts by Cure. If there is a dispute regarding (a) the nature or amount of any Cure, (b) the ability of Reorganized Leslie to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract to be assumed, or (c) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order by the Bankruptcy Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be; provided, however, that the Debtor or Reorganized Leslie, as applicable, shall be authorized to reject any Executory Contract to be deemed effective as of the day before the Effective Date, to the extent the Debtor or Reorganized Leslie, in the exercise of their sound business judgment, conclude that the amount of the Cure obligation as determined by such Final Order, renders the assumption of such Executory Contract unfavorable to the Debtor or Reorganized Leslie.

      6.      **Bar Date for Contract Rejection Damages Claims.** In the event that the rejection of an Executory Contract by the Debtor pursuant to the Plan results in damages to the non-Debtor party or parties to such Executory Contract, a claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtor, or against Reorganized Leslie after the Effective Date, or its properties or interests in property, unless a Proof of Claim with respect to such damages is filed with the Bankruptcy Court and served upon counsel for the Debtor on or before (i) if such Executory Contract is rejected pursuant to Sections 7.1 and 7.2 of the Plan, the later of: (a) thirty (30) days after entry of this Confirmation Order, and (b) thirty (30) days after the non-Debtor party receives notice of the rejection of such Executory Contract pursuant to Section 7.2 of the Plan; and (ii) if such Executory Contract is rejected pursuant to a Final Order of the Bankruptcy Court granting a motion filed by the Debtor to reject that executory contract, thirty (30) days after entry of such order.

      7.      **Copies of the Confirmation Order and Plan.** Copies of the Confirmation Order and Plan may be obtained (i) by request to the Debtor's counsel (a) via e-mail at svandyk@coleschotz.com; (b) via mail at 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801; (c) via telephone at (302) 652-3131; or (d) via facsimile at (302) 652-3117 or (ii) by request to the Debtor's claims, noticing, and balloting agent, Epiq Bankruptcy Solutions, LLC (a) via e-mail at processing@epiqsystems.com; or (b) via telephone at (646) 282-2400. In addition, copies of the Confirmation Order and Plan may be viewed and downloaded, free of charge, at the following website: http://dm.epiq11.com/lesliecontrols. To access documents on the Court's website http://www.deb.uscourts.gov, you will need a PACER password and login, which can be obtained at http://www.pacer.psc.uscourts.gov.

Dated: _____ ___, 2010                      BY ORDER OF THE COURT

**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
Norman L. Pernick (No. 2290)
Marion M. Quirk (No. 4136)
Sanjay Bhatnagar (No. 4829)
500 Delaware Avenue
Suite 1410
Wilmington, DE 19801
Telephone: 302-652-3131
Facsimile: 302-652-3117

-and-

G. David Dean
300 East Lombard Street, Suite 2000
Baltimore, MD 21202
Telephone: (410) 230-0660
Facsimile: (410) 230-0667

Counsel for Debtor and
Debtor-in-Possession

46392/0001-7048197v2